UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HITACHI CONSTRUCTION MACHINERY CO., LTD, A JAPANESE CORPORATION,<br><br>　　　　　　　　　　Plaintiff,<br><br>-vs-<br><br>ACME BUSINESS HOLDCO, LLC, ACME LIFT COMPANY, LLC, ECCO EQUIPMENT COMPANY, LLC, WELD HOLDCO, LLC, AND WOODROW D. WELD, AN INDIVIDUAL, | Case No. 23-cv-1396<br><br>**COMPLAINT** |

Plaintiff Hitachi Construction Machinery Co., Ltd. ("HCM" or "Plaintiff") by and through its undersigned counsel, Paul Hastings LLP, hereby submits this Complaint against Defendants Acme Business Holdco, LLC ("ABH"), Acme Lift Company, LLC ("Acme Lift"), ECCO Equipment Company, LLC ("ECCO"), Weld Holdco, LLC ("WH"), and Woodrow D. Weld ("Weld") (collectively, "Defendants"), and in support thereof, alleges as follows:

## NATURE OF ACTION

1. This action arises from HCM's common law right of equitable subrogation as a result of its payment of approximately $385 million as a guarantor of the financial obligations of ABH and its wholly-owned subsidiaries Acme Lift and ECCO (the "Subsidiaries") to four lenders, and the assignment of the rights of two of those lenders to HCM.

2. ABH is a wholesale rental company that provided customers with specialized earth-moving equipment, such as excavators, wheel loaders, crawler carriers, and compactors.

Between 2018 and 2021, ABH and its Subsidiaries borrowed approximately $385,000,000 from four different lenders. Those loans were guaranteed by HCM.

3. In November, 2022, ABH and its Subsidiaries defaulted on their loans, each of which was guaranteed by HCM. As a result, HCM paid in full the amounts owed by ABH to its lenders. ABH defaulted, in part, because it was left insolvent after WH, its majority shareholder and member, raided more than $57 million from its corporate assets in December 2021. As a result of these events, HCM is entitled to stand in the shoes of the lenders of ABH and its Subsidiaries and obtain payment of the amounts that HCM paid on behalf of ABH and its Subsidiaries, and to seek return of the $57 million in funds unlawfully transferred from ABH. Further, HCM may seek provisional remedies against Defendants to prevent them from using or transferring assets that should be preserved to meet ABH's and the Subsidiaries' obligations to HCM.

## **PARTIES**

4. Plaintiff HCM is a Japanese corporation with its principal place of business at 16-1, Higashiueno 2-chome, Taito-ku, Tokyo, 110-0015, Japan.

5. Defendant ABH is a Delaware limited liability company having its principal place of business in Scottsdale, Arizona.

6. Defendant Acme Lift is an Arizona limited liability company having its principal place of business in Scottsdale, Arizona. Acme Lift is a wholly-owned subsidiary of ABH.

7. Defendant ECCO is a California limited liability company having its principal place of business in Scottsdale, Arizona. ECCO is a wholly-owned subsidiary of ABH.

8. On information and belief, Defendant WH is a Delaware limited liability company with its principal place of business at 4751 E. Indigo Street, Mesa, Arizona 85205.

9. On information and belief, Defendant Weld is an individual domiciled in Paradise

Valley, Arizona. On information and belief, Weld is WH's sole Manager and holds the entire interest in WH.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action under and pursuant to 28 U.S.C. § 1332 because Plaintiff is a citizen of Japan and Defendants are citizens of Arizona, California, and Delaware, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. This Court has personal jurisdiction over Defendants pursuant to CPLR § 302 because, on information and belief and as further alleged herein, they transact business in the State of New York. Further, Defendants have consented to jurisdiction in New York in various agreements identified herein. The Court also has jurisdiction over WH and Weld because ABH engaged in purposeful activities in New York relating to HCM's claims, for the benefit of, with the knowledge and consent of, and under the control of WH and Weld.

12. Venue is proper in this district under and pursuant to 28 U.S.C. § 1391 for the same reasons that jurisdiction is proper in this Court.

## FACTUAL ALLEGATIONS

13. Hitachi Construction Machinery Investment U.S.A. Corporation ("HIUS") is a Delaware corporation and a member of ABH, and is a successor to Hitachi Construction Machinery U.S.A. Corporation ("HHUS"), a Delaware corporation.

14. On or about March 12, 2018, WH, Weld, and HHUS entered into an Equity Purchase Agreement (the "Equity Purchase Agreement"), pursuant to which HCM owns through HIUS 33 1/3 % of ABH's common units (333,333), and the remaining 66 2/3% of the common

units of ABH (666,667) are owned by WH. WH is ABH's sole controlling shareholder (member).

15. Under the Amended and Restated Limited Liability Company Agreement of Acme Business Holdco, LLC (the "LLC Agreement"), dated March 12, 2018, the members of ABH are HIUS and WH.

**Loans to ABH and Its Subsidiaries, and HCM's Guarantees**

16. Since entering into the Equity Purchase Agreement, ABH and its Subsidiaries have borrowed approximately $385 million pursuant to various credit facilities and loan agreements with four lenders (two commercial banks and two leasing companies). Each of these loans was guaranteed by HCM, as summarized below.

17. ***The MUFG Loans***: Between March 2018 and June 2020, ABH entered into a series of loan transactions with The Bank of Tokyo-Mitsubishi UFJ, Ltd. (currently MUFG Bank, Ltd., hereinafter "MUFG") (the "MUFG Loans"), pursuant to which ABH borrowed approximately $237,000,0000 from MUFG. These loan transactions consisted of:

  (a) Credit Agreement dated March 13, 2018 between MUFG and ABH;

  (b) Uncommitted Credit Facility Agreement dated March 13, 2018 between MUFG and ABH; and

  (c) Uncommitted Credit Facility Agreement dated June 3, 2020 between MUFG and ABH. Each of these agreements provided that they would be governed by New York law, and in each agreement ABH consented to jurisdiction in any federal or state court located in the city of New York.

18. ***The SMBC Loans***: On or about October 29, 2021, ABH entered into a loan agreement with Sumitomo Mitsui Banking Corporation ("SMBC") titled an Uncommitted and Revolving Credit Line Agreement, pursuant to which ABH became obligated to SMBC in the

amount of approximately $97,000,000 in principal and interest (the "SMBC Loans"). This agreement provided that it would be governed by New York law, and ABH consented to jurisdiction in any federal or state court located in the city of New York.

19. **_The MHC Loans:_** Between April 2018 and June 2021, ABH entered into a series of loan transactions with Mitsubishi UFJ Lease & Finance (U.S.A.) Inc. (currently Mitsubishi HC Capital (U.S.A.) Inc., hereinafter "MHC[1]") (the "MHC Loans"), pursuant to which ABH borrowed approximately $24,428,605 from MHC. These loan transactions consisted of:

(a) (i) Loan and Security Agreement dated April 26, 2018 among MHC, ABH, Acme Lift and Mackinnon Skye Holdings, LLC; (ii) Loan and Security Agreement dated September 16, 2020 among the same parties as those in the immediately preceding agreement set forth in item (i), plus ECCO; and (iii) Loan and Security Agreement dated April 27, 2021 among the same parties to those in the immediately preceding agreement set forth in item (ii);

(b) Draw-to Loan Note dated May 1, 2018 made by ABH in favor of MHC in the amount of $4,424,000 executed pursuant to the Loan and Security Agreement set forth in subparagraph (a)(i);

(c) The following six Draw-to Loan Notes made by ABH in favor of MHC: (i) Draw-to Loan Note dated January 8, 2021 in the amount of $7,665.524.08; (ii) Draw-to Loan Note dated April 9, 2021 in the amount of $3,176,186.78; (iii) Draw-to Loan Note dated April 19, 2021 in the amount of $1,604,364.69; (iv) Draw-to Loan Note dated April 23, 2021, in the amount of $1,998,878.14; (v) Draw-to Loan Note dated April 29, 2021 in the amount of $2,418,143.37; and

---

[1] On April 1, 2021 Mitsubishi UFJ Lease & Finance (U.S.A.) Inc. and Hitachi Capital Corporation merged to become Mitsubishi HC Capital (U.S.A.) Inc. ("MHC"). MHC is a subsidiary of the commercial bank lender MUFG. MHC loans were secured by the heavy equipment they financed.

(vi) Draw-to Loan Note dated May 24, 2021 in the amount of $3,080,441.84; respectively executed pursuant to the Loan and Security Agreement set forth in this paragraph 19 at subparagraph (a)(ii).

(d) The following two Draw-to Loan Notes made by ABH in favor of MHC: (i) Draw-to Loan Note dated May 24, 2021 in the amount of $696,579.75 and (ii) Draw-to Loan Note dated June 11, 2021 in the amount of $6,162,662.75; respectively executed pursuant to the Loan and Security Agreement set forth in this paragraph 19 at subparagraph (a)(iii).

20. Each of the agreements identified in paragraph 19 subparagraph (a) provided that they would be governed by New York law, and ABH consented to jurisdiction in any federal or state court located in the city of New York.

21. **The SMFL Loans:** Between June 2019 and June 2020, ABH's Subsidiaries entered into a series of loan transactions with Sumitomo Mitsui Finance and Leasing Co., Ltd. ("SMFL") (the "SMFL Loans"), pursuant to which they became obligated to SMFL in the amount of approximately $25,918,898. These loan transactions consisted of:

(a) (i) Master Finance and Security Agreement No. 1 dated June 14, 2019 between SMFL as Lender and Acme Lift as Borrower; and (ii) Master Financing and Security Agreement No. 1 dated June 22, 2020 between SMFL as Lender and ECCO as Borrower.

(b) The following seventeen Schedules and Promissory Notes made by Acme Lift in favor of SMFL executed under the Master Financing and Security Agreement identified in this paragraph 21 at subparagraph (a)(i): (i) Schedule and Promissory Note No. 14006 dated July 3, 2019; (ii) Schedule and Promissory Note No. 14416 dated July 26, 2019; (iii) Schedule and Promissory Note No. 14417 dated July 26, 2019; (iv) Schedule and Promissory Note No. 14716 dated August 21, 2019; (v) Schedule and Promissory Note No. 14718 dated August 21, 2019; (vi) Schedule and Promissory Note No. 14857 dated September 4, 2019; (vii) Schedule and Promissory

Note No. 14859 dated September 4, 2019; (viii) Schedule and Promissory Note No. 15261 dated October 10, 2019; (ix) Schedule and Promissory Note No. 15540 dated November 7, 2019; (x) Schedule and Promissory Note No. 16467 dated February 19, 2020; (xi) Schedule and Promissory Note No. 16516 dated February 19, 2020; (xii) Schedule and Promissory Note No. 16725 dated March 13, 2020; (xiii) Schedule and Promissory Note No. 16993 dated April 20, 2020; (xiv) Schedule and Promissory Note No. 17049 dated May 12, 2020; (xv) Schedule and Promissory Note No. 17050, dated May 12, 2020; (xvi) Schedule and Promissory Note No. 18172 dated December 14, 2020; and (xvii) Schedule and Promissory Note No. 18519, dated January 28, 2021.

(c) The following Schedule and Promissory Note executed under the Master Financing and Security Agreements identified in this paragraph 21 at subparagraph (a)(ii): Schedule and Promissory Note No. 1 made by ECCO, in favor of SMFL.

22. Each of the agreements identified in paragraph 21 provided that it would be governed by New York law, and the Subsidiaries consented to jurisdiction in any federal or state court located in the city of New York.

23. The Master Finance and Security Agreement No. 1 dated June 14, 2019, between SMFL as Lender and Acme Lift as Borrower set forth in paragraph 21 subparagraph (a)(i) is supported by the following guaranties:

(a) Individual Guaranty executed by Weld, which provides that the Guaranty will be governed by New York law and in which Weld consented to jurisdiction in any federal or state court in New York;

(b) Entity Guaranty executed by ABH, which provides that the Guaranty will be governed by New York law and in which ABH consented to jurisdiction in any federal or state court in New York.

24. By entering into the above loan transactions, ABH and the Subsidiaries engaged in purposeful activities in New York relating to HCM's claims, for the benefit of, with the knowledge and consent of, and under the control of WH and Weld.

25. HCM executed the following guarantees in favor of the four lenders with respect to the MUFG Loans, the SMBC Loans, the MHC Loans, and the SMFL Loans (collectively the "HCM-guaranteed Loans"):

(a) Guarantee dated March 13, 2018 in favor of MUFG, as amended;

(b) Guarantee dated June 3, 2020 in favor of MUFG, as amended;

(c) Guarantee ("*Hoshosho*") dated October 31, 2019 in favor of SMBC, as amended;

(d) (i) Guarantee (*Hoshosho*) dated April 27, 2018 as amended; (ii) Guarantee (*Hoshosho*) dated September 16, 2020, as amended; and (iii) Guarantee (*Hoshosho*) dated April 27, 2021, as amended, respectively in favor of MHC;

(e) The following twenty-one Partial Recourse Agreements (which include HCM's guarantee of the underlying indebtednesses) between SMFL and HCM: (i) Partial Recourse Agreement dated July 3, 2019; (ii) Partial Recourse Agreement dated July 26, 2019 (covering collateral ZW1506-005313, ZW2506-005227, ZW2506-005228, ZW1506-005347, ZW2206-005298, ZW1506-005348 and ZW2206-005278); (iii) Partial Recourse Agreement dated July 26, 2019 (covering collateral 1FFDAP70LKF140133, 1FFDAP70HKF140132, 1FFDBP70VKF240273, 1FFDC571TKF340652, 1FFDC571LKF340659 and 1FFDC571VKF340660); (iv) Partial Recourse Agreement dated August 21, 2019 (covering collateral ZW2506-005231 and ZW3106-005234); (v) Partial Recourse Agreement dated August 21, 2019 (covering collateral 1FFDAP70TKF140136, 1FFDBP70AKF240274,

1FFDC571HKF340663, 1FFDDP70CKF840588, 1FFDC57VKF340657, 1FFDDR70JKF940751, 1FFDDR70VKF940753, 1FFDDR70CKF940752, 1FFDDR70KKF940750 and 1FFDDR70JKF940748); (vi) Partial Recourse Agreement dated September 4, 2019 (covering collateral ZW1506-005360, ZW1506-005361, ZW3106-005235, ZW3106-005237 and ZW3106-005238); (vii) Partial Recourse Agreement dated September 4, 2019 (covering collateral HCMDAT60A00200393, HCMDAT60C00200391, HCMDAT60J00200390, 1FFDBP70LKF240275, 1FFDC571CKF340665, 1FFDC571EKF340664, HCMDFD6OC00700373, HCMDFD60E00700369, HCMDFD60J00700377, HCMDFD60L00700370 and HCMDFD60P00700375); (viii) Partial Recourse Agreement dated October 10, 2019; (ix) Partial Recourse Agreement dated November 7, 2019; (x) Partial Recourse Agreement dated February 5, 2020; (xi) Partial Recourse Agreement dated February 13, 2020 (covering collateral 1FFDDR70CKF940740, ZW1806- 005468, ZW1806-005467, ZW1806-005471 and HCMJAG60C00060675); (xii) Partial Recourse Agreement dated February 13, 2020 (covering collateral 87410476, 87410475, 85800159, 85800160, C17000111 and C170001336); (xiii) Partial Recourse Agreement dated February 19, 2020; (xiv) Partial Recourse Agreement dated April 20, 2020 (covering collateral 85800150, 85800151, GTH1015E-10752, GTH1015E-10696, 160089559, GTH1013-17367, 160065433, GTH5515B-3712, GTH5515B-2802, GTH5515B-3718, GTH5514B-681, 160089559, GTH1013-17367, 160061765, 160064201, 160061548, 160052236, 201903130011, 201904260059, 74535326, 74535322, 12900080 and 12900123); (xv) Partial Recourse Agreement dated April 20, 2020 (covering collateral HCMJAG60C00060675, HCMJAG60A00060677, HCMJAA70J00030800, HCMJAA70C00030801, 1FFDDR70EGF940135, HCMJAG60E00060313 and 1FFDDR70CHF940291); (xvi) Partial Recourse Agreement dated April 27, 2020; (xvii) Partial Recourse Agreement dated May 12, 2020

9

(covering collateral ZW1806-005508, ZW1806-005499, ZW1806-005498, ZW1806-005387, ZW3106-005264 and ZW2206-005375); (xviii) Partial Recourse Agreement dated May 12, 2020 (covering collateral 1FFDC571CLF340795, 1FFDC571TLF340796, 1FFDC571PLF340797, 1FFDC571KLF340798, 1FFDC571CLF340800, 1FFDDR70CLF940843, 1FFDDR70TLF940844, 1FFDDR70VLF840674, CMDD560C00010187, HCMDD560P00010220, 1FFDC571JLF340804, 1FFDDR70JLF940850, 1FFDDR70CLF940851, 1FFDDR70LLF940854, 1FFDDR70HLF940855, 1FFDDR70CLF940857, 1FFDC571CLF340805, 1FFDC571VLF340806, 1FFDC571ALF340807 and HCMJAG60T0061125); (xix) Partial Recourse Agreement dated March 12, 2020 (covering collateral ZW1806-005505, ZW1806- 005506, ZW1806-005443, ZW1806-005388, ZW1806-005375, ZW1806-0053431, ZW1806-005527, ZW1806-005522, ZW2206-005352, ZW2206-005355, ZW2206-005339, ZW2206-005349, ZW2206-005379, ZW2206-005363, ZW3106-005259 and ZW3106-005263); (xx) Partial Recourse Agreement dated December 14, 2020; and (xxi) Partial Recourse Agreement dated January 28, 2021.

**WH and Weld Transfer $57 Million in ABH Assets, Rendering ABH Insolvent**

26. After borrowing hundreds of millions of dollars from its lenders, ABH entered into an Asset Purchase Agreement with United Rentals, Inc. ("URI"), dated June 29, 2021 (the "URI Asset Purchase Agreement"). Under the URI Asset Purchase Agreement, ABH agreed to sell its fleet of aerial work platforms, telehandlers, and air compressors to URI at a base purchase price of $275,000,000.

27. On or about June 29, 2021, HIUS and WH entered into a Memorandum of Understanding related to the distribution of sale proceeds to WH resulting from the URI Asset Purchase Agreement.

28. As a condition for closing on the URI Asset Purchase Agreement, URI, ABH,

HCM, and Weld entered into a Non-Competition Agreement. The Non-Competition Agreement provided that any action arising out of or based upon the Agreement would be initiated in federal or state court in New York, and that the parties submit to the exclusive jurisdiction of such courts. Delivery of the Non-Competition Agreement was required at the initial closing of the URI Asset Purchase Agreement.

29. As a result, as a condition for closing on the URI Asset Purchase Agreement, Weld made promises on behalf of WH, an entity he controls, that are enforceable in federal or state court in New York, and were a condition of closing for the URI Asset Purchase Agreement.

30. By entering into the Asset Purchase Agreement and the Non-Competition Agreement, ABH engaged in purposeful activities in New York relating to HCM's claims for the benefit of, with the knowledge and consent of, and under the control of WH and Weld.

31. Under the LLC Agreement, ABH was prohibited from making distributions to its members if such distributions would render ABH insolvent. Specifically, the LLC Agreement expressly incorporates Section 18-607 of the Delaware Act, which prohibits certain distributions to members of a Delaware limited liability company. Section 7.01(b) of the LLC Agreement states:

> *"Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not make any Distribution to Members if such Distribution would violate 18-607 of the Delaware Act or other Applicable Law."*

32. Section 18-607(a) of the Delaware Act prohibits a distribution to a member:

> *"[T]o the extent that at the time of the distribution, after giving effect to the distribution, all liabilities of the limited liability company, other than liabilities to members on account of their limited liability company interests and liabilities for which the recourse of creditors is limited to specified property of the limited liability*

*company, exceed the fair value of assets of the limited liability company, except that the fair value of property that is subject to a liability for which the recourse of creditors is limited shall be included in the assets of the limited liability company only to the extent that the fair value of that property exceeds that liability."*

33. On or about December 21, 2021, without permission from HIUS and in disregard of ABH's non-waivable obligations under the Delaware Act, Weld and WH executed a distribution of ABH assets to WH and/or Weld in the approximate amount of $57,665,000. WH did not inform HIUS that it had effected this distribution until several days later, in an email message sent on Saturday, December 25, 2021.

34. Although WH argued that the distribution to WH was permitted under the June 2021 Memorandum of Understanding among the members of ABH, HIUS denied this claim, and immediately responded that if the distribution resulted in ABH's liabilities exceeding its assets, it would violate Delaware law. HIUS also demanded the immediate return of any distributions to WH in excess of the amount of $17,759,563, which was the only amount that HIUS had approved to be distributed in a written consent executed by WH and HIUS on December 22, 2021. WH has refused to return the distribution since then.

35. On information and belief, as a result of the December 2021 distribution to WH, ABH's liabilities exceeded its assets.

**ABH and Its Subsidiaries Default on the HCM-guaranteed Loans**

36. On or about November 14, 2022, ABH defaulted on the HCM-guaranteed Loans.

37. On November 15, 2022, MUFG demanded HCM to perform its guarantees for the Guaranteed Loans, demanding $237,000,000 in principal plus interest.

38. On November 15, 2022, SMBC demanded HCM to perform its guarantees for the

Guaranteed Loans, demanding $97,000,000 in principal and interest thereon (at 9% per annum).

39. On November 16, 2022, MHC demanded HCM to perform its guarantees for the Guaranteed Loans, demanding $24,428,605.12 in principal and $8606.42 in interest.

40. On December 5, 2022, SMFL demanded HCM to perform under the guarantees for the Guaranteed Loans, demanding $25,918,898.03 in principal and legal fees.

41. On November 16, 2022, HCM paid by wire transfers: (i) MUFG the amount of $237,000,000 and (ii) SMBC the amount of $97,048,500; for the total amount of $ 334,048,500 by performing its guarantees issued in favor of the two lenders in connection with the HCM-guaranteed Loans.

42. MUFG acknowledged receipt of the wire transfer on November 16, 2022 (in Eastern Standard Time).

43. For SMBC, HCM has a record of wire transfer initiated on November 17, 2022 (in Japan Standard Time).

44. ABH has judicially admitted that HCM "paid both MUFG and SMBC in full." Compl. ¶ 22, *Acme Business Holdco, LLC et. al. v. Hitachi Construction Machinery Co., Ltd. and Hitachi Construction Machinery Investment U.S.A. Corp.*, No. 650347/2023 (N.Y. App. Div. 1st Dept., Jan. 18, 2023).

45. On December 2, 2022 and December 6, 2022, HCM paid by wire transfers: (i) MHC the amount of $24,437,211.54, and (ii) SMFL the amount of $25,918,898.03; for the total amount of $ 50,356,109.57 by performing its guarantees issued in favor of the two lenders in connection with the HCM-guaranteed Loans.

46. In exchange for HCM's payment of $25,918,898.03 to SMFL, HCM and SMFL executed an Assignment Agreement dated December 6, 2022 by which SMFL assigned all of its

rights, remedies, obligations, liabilities, title, and interests under: (A) Master Financing and Security Agreement No. 1, dated June 14, 2019, (i) the seventeen defaulted Schedules and Promissory Notes thereunder identified in paragraph 21 subparagraph (b); (ii) Individual Guaranty executed by Woodrow D. Weld; (iii) Entity Guaranty executed by ABH; (iv) Entity Guaranty executed by Global Equipment Management, LLC; (vi) Entity Guaranty executed by A-Aircomp Holdco, LLC; (vii) Entity Guaranty executed by Mackinnon Skye Holdings, LLC; (viii) Entity Guaranty, executed by Allied Crane & Machinery, LLC; and under (B) Master Financing and Security Agreement No. 1 dated June 22, 2020 between SMFL and Acme Lift (the "ECCO MFSA"), (i) Entity Guaranty executed by ABH guaranteeing ECCO's obligations to SMFL under the ECCO MFSA; and (ii) Schedule and Promissory Note No. 1 by ECCO Equipment Company, LLC ("ECCO") as Borrower in favor of SMFL as Lender.

47. On November 28, 2022, MHC sent a letter to HCM advising, in part, the following:

*"Upon indefeasible payment in full by Guarantor [HCM] of all obligations owing by Borrower [ABH] to Lender [MHC], as confirmed in writing (including email) by Lender to Guarantor, all of Lender's liens in the assets of Borrower (if any) shall be deemed assigned to Guarantor…"*

48. As stated in paragraph 45, on December 2, 2022, HCM performed its guarantee to MHC by making an indefeasible and full payment of $24,437,211.54 as demanded by MHC in its November 16, 2022 letter to HCM.

## COUNT ONE
## BREACH OF CONTRACT (MUFG LOANS)

49. HCM incorporates each and every allegation above, as if stated here in full.

50. As stated herein, ABH is party to certain written agreements with MUFG that obligate it to repay any funds advanced to it, as well as interest and other amounts, and to meet the conditions, terms, covenants, and other requirements of those agreements.

51. ABH defaulted on its obligations to MUFG under these agreements, and it remains in default on its obligations.

52. As a result of ABH's default, MUFG demanded HCM to perform its guarantees for the MUFG Loans, demanding $237,000,000 in principal plus interest.

53. On November 16, 2022, HCM paid MUFG by wire transfer the amount of $237,000,000.

54. MUFG performed, or was excused from performing, each, every, and all of the obligations required to be performed under its agreements with ABH.

55. By reason of the foregoing, and based on the doctrine of equitable subrogation, the amount due and owing to HCM from ABH with regard to the MUFG Loans is $237,000,000, plus accruing interest and reasonable attorneys' fees and costs as is entitled to judgment thereon.

## COUNT TWO
## BREACH OF CONTRACT (SMBC LOANS)

56. HCM incorporates each and every allegation above, as if stated here in full.

57. As stated herein, ABH is party to certain written agreements with SMBC that obligate it to repay any funds advanced to it, as well as interest and other amounts, and to meet the conditions, terms, covenants, and other requirements of those agreements.

58. ABH defaulted on its obligations to SMBC under these agreements, and it remains in default on its obligations.

59. As a result of ABH's default, SMBC demanded HCM to perform its guarantees

for the MUFG Loans, demanding $97,000,000 in principal plus interest (and default interest).

60. On November 16, 2022, HCM paid SMBC by wire transfer the amount of $97,000,000.00.

61. SMBC performed, or was excused from performing, each, every, and all of the obligations required to be performed under its agreements with ABH.

62. By reason of the foregoing, and based on the doctrine of equitable subrogation, the amount due and owing to HCM from ABH with regard to the SMBC Loans is $97,000,000, plus accruing interest (including default interest) and reasonable attorneys' fees and costs as is entitled to judgment thereon.

### COUNT THREE
### BREACH OF CONTRACT (MHC LOANS)

63. HCM incorporates each and every allegation above, as if stated here in full.

64. As stated herein, ABH is party to certain written agreements with MHC that obligate it to repay any funds advanced to it, as well as interest and other amounts, and to meet the conditions, terms, covenants, and other requirements of those agreements.

65. ABH defaulted on its obligations to MHC under these agreements, and it remains in default on its obligations.

66. As a result of ABH's default, MHC demanded HCM to perform its guarantees for the MUFG Loans, demanding $24,428,605.12 in principal and $8606.42 in interest.

67. On December 2, 2022, HCM paid MHC by wire transfer the amount of $24,437,211.54.

68. MHC performed, or was excused from performing, each, every, and all of the obligations required to be performed under its agreements with ABH.

69. By reason of the foregoing, and based on the doctrine of equitable subrogation and the assignment of MHC's rights to HCM, the amount due and owing to HCM from ABH with regard to the MHC Loans is $24,437,211.54, plus accruing interest and reasonable attorneys' fees and costs as is entitled to judgment thereon.

## COUNT FOUR
## BREACH OF CONTRACT (SMFL LOANS)

70. HCM incorporates each and every allegation above, as if stated here in full.

71. As stated herein, Acme Lift and ECCO are party to certain written agreements with SMFL that obligate them to repay any funds advanced to them, as well as interest and other amounts, and to meet the conditions, terms, covenants, and other requirements of those agreements.

72. Acme Lift and ECCO defaulted on their obligations to SMFL under these agreements, and remain in default on their obligations.

73. As a result of the defaults of Acme Lift and ECCO, SMFL demanded HCM to perform its guarantees for the SMFL Loans, demanding $25,918.898.03 in principal and legal fees.

74. On December 2, 2022, HCM paid SMFL by wire transfer the amount of $25,918.898.03.

75. SMFL performed, or was excused from performing, each, every, and all of the obligations required to be performed under its agreements with Acme Lift and ECCO.

76. By reason of the foregoing, and based on the doctrine of equitable subrogation and the assignment of MHC's rights to HCM, the amount due and owing to HCM from Acme Lift and ECCO with regard to the SMFL Loans is $25,918.898.03, plus accruing interest and reasonable attorneys' fees and costs as is entitled to judgment thereon.

## COUNT FIVE
## FRAUDULENT CONVEYANCE

77. HCM incorporates each and every allegation above, as if stated here in full.

78. As stated herein, ABH entered into agreements with regard to the MUFG Loans, the SMBC Loans, the MHC Loans, and SMFL Loans.

79. Thereafter, on or about December 21, 2021, WH and Weld orchestrated the distribution and transfer of more than $57,000,000 by ABH to WH and/or Weld, at a time when ABH was insolvent or became insolvent as a result of this distribution and transfer.

80. The distribution and transfer orchestrated by WH and Weld was made without fair consideration or reasonably equivalent value being provided to ABH.

81. On information and belief, at the time of the distribution and transfer to WH and/or Weld, ABH was engaged in or was about to engage in a business or transaction for which the remaining assets of ABH were unreasonably small in relation to the business or transaction.

82. As a result, the distribution and transfer of these funds to WH and/or Weld was fraudulent and unlawful.

83. As the subrogee of MUFG, SMBC, MHC, and SMFL, HCM requests avoidance of the distribution made by WH and Weld in order to satisfy HCM's claim against ABH, provisional remedies, including but not limited to, an order of attachment of the transferred funds, and any and all other relief that may be available under applicable law or principles of equity.

WHEREFORE, Plaintiff, HCM, demands:

a. Entry of judgment against ABH and its Subsidiaries in the amount of at least $384,404,609.57;

b. Avoidance of any transfers made to WH and/or Weld by ABH, to the extent

necessary to satisfy HCM's claims;

      c.      An attachment and other provisional remedies against each of Defendants' assets;

      d.      A preliminary and permanent injunction against further disposition by Defendants of the assets transferred or other property held by WH and Weld, and other pre-judgment and post-judgment relief to assist in the recovery of amounts owed to HCM;

      e.      Attorneys' fees and costs;

      f.      Accruing interest; and

      g.      Such other relief as the Court may deem equitable and just.

Dated: February 17, 2023

Respectfully submitted,

By: */s/ Avi Weitzman*
Avi Weitzman
aviweitzman@paulhastings.com

Kyrsten Ponturo
kyrstenponturo@paulhastings.com

PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
Telephone: 1(212) 318-6000
Facsimile: 1(212) 230-7689

Peter C. Meier
*(Pro Hac Vice Application Forthcoming)*
petermeier@paulhastings.com

PAUL HASTINGS LLP
101 California Street, Forty-Eighth Floor
San Francisco, CA 94111
Telephone: 1(415) 856-7000
Facsimile: 1(415) 856-7100

        Christopher H. McGrath
        *(Pro Hac Vice Application Forthcoming)*
        chrismcgrath@paulhastings.com

        PAUL HASTINGS LLP
        695 Town Center Drive
        Costa Mesa, California 92626
        Telephone: 1(714) 668-6200
        Facsimile: 1(714) 979-1921

        Attorneys for Plaintiff
        *Hitachi Construction Machinery Co., Ltd., a Japanese Corporation*